MOSES STEWART v. EGBERT COWLES and Others.[1]

January 14, 1897.

Nos. 10,228—(177).

**Authority of Agent—Sale of Business Chattels—Evidence.**
> It is not within the apparent authority of a general agent, having the entire management of his principal's business, to bind him by a contract for the sale of chattels belonging to such business, to be paid for by credit of the purchase price upon an indebtedness due from the agent to the purchaser. The burden is upon the purchaser to show that the agent had such authority. But where there is no question as to the good faith of either the agent or purchaser, and both the agent and principal are dead at the time of the trial, any circumstantial evidence fairly tending to establish the agent's authority is sufficient to make a prima facie case.

**Same.**
> Evidence *held* in this case sufficient to establish the authority of an agent to sell the goods of his principal in payment of the agent's debt.

Appeal by defendants from an order of the district court for Hennepin county, Elliott, J., denying a motion for a new trial. Affirmed.

*Booth & Douglas,* for appellants.

*O. W. Baldwin,* for respondent.

START, C. J. The undisputed evidence in this case established the following facts: Henry B. Morrison, the son of the original defendant herein, Francis Morrison, now deceased, prior to the year 1884, carried on a general lumber and brick business at Motley, this state. His mill at which the lumber was manufactured was on his homestead. In October, 1884, he made an assignment, for the benefit of his creditors, of all of his unexempt property. At the time of his assignment he was indebted to the plaintiff herein in the sum of about $4,500, which indebtedness was secured by a bill of sale from Henry B. Morrison to the plaintiff of 600,000 brick which were marked with the plaintiff's name on the kilns. The father, Francis Morrison, purchased from the assignee prac-

tically all of the assets of Henry coming to the hands of the assignee, and thereafter carried on, in his own name, the same business as his son had previously carried on, and at the same place. The father gave no personal attention to the business, but his son Henry was his general agent, and conducted the business the same as he had done before his assignment, except that everything relating to the business was done in his father's name.  ·

While he was so conducting this business for his father, Henry applied to the plaintiff for a loan of $2,500 to be used in the business, and it was then agreed between him, as such agent, and the plaintiff, that the plaintiff should make to the father the desired loan, and that enough brick and lumber should be delivered to the plaintiff by the father to pay the debt due from Henry to the plaintiff which existed at the time of the assignment.   There is no evidence showing that the father had any knowledge of the making of this contract.   Thereupon the plaintiff advanced the amount of the proposed loan, which was used in the father's business, and lumber and brick of the value of $3,096.90, from the stock belonging to the father, were delivered to the plaintiff by Henry acting as such general agent, which amount was credited on the claim due from Henry to plaintiff.

This action was brought by the plaintiff to recover the balance of the loan so made to Francis Morrison, which is admitted to be $2,211 and interest.   The defendant set up, by way of counterclaim, the value of the lumber and brick, $3,096.90, so delivered to the plaintiff.   At the time of the trial both Henry B. and Francis Morrison were dead, and the executors of the latter were substituted as defendants.   The plaintiff had a verdict for the amount of his claim, and the defendants appealed from an order denying their motion for a new trial.   The evidence to prove the foregoing facts and other facts hereinafter referred to was duly objected to and received over the objections and exceptions of the defendants.   The admission of this evidence is assigned as error by the defendants. They further assign as error that the verdict is not justified by the evidence.

While the assignments of error are numerous, there is but one question in this case:  Is the evidence sufficient to show, prima facie, the authority of the son to make this contract on behalf of

his father, and apply the lumber and brick in question in payment of his then-existing indebtedness to the plaintiff? Although the son was the general agent of his father in the management of the business, yet the appropriation of his principal's property to the payment of his own debt was not within the scope of his apparent authority, and the burden was on the plaintiff to show that in fact he had such authority. Talboys v. Boston, 46 Minn. 144, 48 N. W. 688.

But the plaintiff was not bound to prove such authority by direct evidence. Both the father and son being dead, the statute sealed the plaintiff's lips as to any conversation he may have had with either of them, and he was deprived by death of the opportunity of calling them as witnesses on the question of the son's authority. He therefore had no other way to prove such authority except by the admissions of the father and by circumstantial evidence. It was competent for him to prove such authority by such evidence. Freeman v. Lawton, 58 Minn. 546, 60 N. W. 667. There is no question as to the good faith either of the agent or of the plaintiff in making the contract. In view of the admitted special circumstances of this case, any evidence fairly tending to show the son's authority must be held to be sufficient to make a prima facie case, and cast the burden upon the defendants to rebut it.

The facts and circumstances disclosed by the evidence which tend to establish the son's authority in the premises may be briefly summarized as follows: The relationship of the principal and agent was that of father and son. The business conducted in the father's name was the identical business owned and carried on by the son before his assignment, and he continued to carry it on precisely as before, except it was as agent for his father. He bought logs, sold lumber and brick, received payment therefor, gave notes, drew checks, borrowed money, and paid debts, all in his father's name. The mill and lumber yard used for the purpose of conducting the father's business were a part of the homestead of the son, and the brick yard, estimated to be of the value of $27,-000, was conveyed by the son, through a third party, to his father, without consideration. About the time, or soon after, the son began to run the business in his father's name and for him, the latter stated that he was going into the business in his own name for

the purpose of assisting his son in getting his old matters settled up,—to get his boy on his feet again.

While the son was conducting the business for his father, but some three months after the making of the contract in question with the plaintiff, he settled a claim of $1,600 against himself personally, which was contracted before his assignment, by giving his father's notes therefor, signing his father's name to the notes as agent. This was done in the father's presence, and when the payee of the notes said to the father, "He seems to use your name pretty freely," the reply was: "He does, and it is all right. Henry is my agent for all matters up the river, and I hope he will get on his feet again. With my help he will;" and, further, that Henry was going ahead to straighten up his business, and pay his old bills.

The brick of which the plaintiff had a bill of sale were shipped by the son to the father after the making of the contract with the plaintiff. The defendants offered no evidence on the question of the son's authority. The question is not whether each of these facts, considered alone, establishes, prima facie, the authority of the son to make the contract with the plaintiff, but whether, when they are considered as a whole, they are sufficient to support a finding by the jury that the son was so authorized.

Our conclusion is that the evidence of these facts, unexplained and uncontradicted, was sufficient to make the question of the son's authority one for the jury, and that the verdict is justified by the evidence.

Order affirmed.